UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY F. WILSON,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>  Defendant. | Case No. 16-cv-01971-WHO<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 22 |

## INTRODUCTION

Plaintiff Anthony F. Wilson ("Wilson") and the Commissioner of Social Security ("defendant" or "Commissioner") cross-move for summary judgment, contesting whether the ALJ's residual functional capacity ("RFC") assessment failed to correctly reflect examining psychologist Dr. DeBattista's opinion. The question is whether an inconsistency exists between DeBattista's opinion that Wilson can perform "one to two-step instructions" and the ALJ's RFC assessment limiting Wilson to "simple, repetitive tasks" and, if so, whether that inconsistency was required to be addressed by the ALJ. *Compare* Administrative Record ("AR") 465 *with* AR 16. I conclude that the ALJ failed to explain why he rejected DeBattista's one to two-step instructions. Therefore, I GRANT plaintiff's motion and remand this case for further proceedings.

## BACKGROUND

### I. WILSON'S IMPAIRMENTS

Wilson filed for disability in May 2012, claiming he was disabled due to having been shot in the head, and that he suffered from paranoia, seizures, anxiety, and memory loss starting in October 19, 2009. AR 59.[1]

---

[1] The scope and impact of Wilson's impairments – physical or mental – are not really at issue on this appeal. Instead, the issue is a legal question of whether the ALJ properly took into account an

In February 2010 (pursuant to a prior application for disability benefits), Wilson's medical history was reviewed by non-examining state-agency psychologist Dr. Paul Klein. AR 333 – 346. Klein opined that Wilson had "adequate memory and understanding for simple 1-2 step tasks; adequate sustained concentration, persistence, and pace for simple 1-2 step tasks; adequate social interaction with supervisors, coworkers, and limited public contact; adequate adaptability to change in most routine work-like settings." AR 346. Klein added that Wilson was capable of "new learning of simple 1-2 step tasks" but might need supervision while transitioning. AR 346.

In February 2011, Wilson was seen by agency examining psychologist Dr. Jonathan Howard. Wilson took the Wechsler Memory Scale-III test and scored an Immediate Visual Memory of 49 and a Working Memory of 79, which is in the eighth percentile. AR 368. The Immediate Visual Memory score is "below the first tenth of the first percentile." Pl.'s Mot. 5; AR 368 ("(<0.1%ile; 90% C.L.: 49-66))." The Working Memory score is in the 8th percentile. *Id*. Howard's diagnostic impression was that Wilson had a cognitive disorder not otherwise specified and a mood disorder not otherwise specified with anxious features. AR 368. In addition, Howard opined that Wilson had marked impairments in understanding, remembering and carrying out both complex as well as short and simple instructions. AR 368.

In March 2011, non-examining agency psychologist Dr. Robert Liss reviewed Wilson's records. AR 369-382. Liss determined Wilson was "able to complete simple tasks; able to maintain [concentration, persistence or pace] over a full work week; able to interact, with limited public contact; able to adapt to ordinary workplace stress and change." AR 382.

In October 2012, at the initial review level, agency mental health consultant Dr. Patricia Heldman concluded that there was evidence of a severe "affective disorder" but "insufficient evidence" in the record of any limitations in mental functioning. AR 62-64.

In April 2013, Wilson was examined by agency psychologist Dr. Charles DeBattista. AR 460-466. On the psychiatric evaluation, DeBattista noted that Wilson had a "five forward digit span," meaning Wilson could remember three out of three objects immediately but was unable to

---

examining psychologist's limitation when determining Wilson's RFC.

1  recall any of the three objects after five minutes. AR 464. DeBattista also noted Wilson would
2  "benefit from neuropsychologic testing to assess the extent of his memory difficulties." AR 465.
3  Based on his examination, De Battista opined that Wilson was able to "understand, remember, and
4  carry out simple one or two-step job instructions." AR 465. He, however, was "not able to do
5  detailed and complex instructions." *Id*.

In May 2013, non-examining agency psychiatrist Dr. F. L. Williams reviewed the record for a "Mental Residual Functional Capacity Assessment." AR 78-79. Williams determined that Wilson was not significantly limited in the ability to "carry out very short and simple instructions." AR 78. However, Wilson was moderately limited in the ability to "carry out detailed instructions." AR 78. Williams opined that Wilson did not have adaptation limitations but when asked to explain in "narrative form" the adaptation limitations, Williams wrote "SRT."[2] AR 79.

## II. PROCEDURAL HISTORY

Wilson filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for Supplemental Security Income on May 9, 2012. AR 12. His claims were denied initially and on reconsideration on October 9, 2012 and May 21, 2013. AR 12.

On March 19, 2014, Wilson testified at a hearing before an ALJ. AR 27-58. At the hearing, a Vocational Expert was asked what possible work Wilson could perform assuming a "capacity for work at all exertional levels, nonpublic, simple, repetitive tasks, no heights or hazards . . . [like] moving machinery, operating heavy equipment." AR 46. The Vocational Expert testified that, although Wilson's previous jobs were precluded, there were other jobs Wilson could perform. AR 46-48. The examples included: an industrial cleaner (SVP Level 2), a hand packager (SVP Level 2), and a sandwich maker (SVP Level 2). AR 47-48.

On August 7, 2014, the ALJ denied Wilson's request to reopen his prior applications for disability benefits and declined to award him benefits going forward, concluding he was not and is not disabled within the meaning of the Social Security Act. AR 12-13. On April 14, 2016,

---

[2] According to Wilson's motion, "SRT" stands for "simple, repetitive tasks or simple, routine tasks." Pl.'s Mot. 6.

3

1    Wilson filed this appeal.

2    **III.    ALJ DECISION**

3        The ALJ utilized the five-step sequential evaluation to determine Wilson's disability claim.
4    AR 13; *see* 20 C.F.R. §§ 404.1520(a), 416.920(b).  At step one, the ALJ determined that Wilson
5    met the insured status requirements of the Social Security Act through June 30, 2012, as Wilson
6    had not engaged in any "substantial gainful activity" since his "alleged onset date." AR 14.  At
7    step two, the ALJ found that Wilson had the following severe impairments: "status post multiple
8    gunshot wounds…; seizure disorder; a cognitive deficit of unclear etiology; and obesity." AR 15.

9        At step three, the ALJ concluded that Wilson's impairments did not meet or equal the
10   severity required for the listed impairments. AR 15.  The ALJ then determined that Wilson had a
11   RFC to "perform a full range of work at all exertional levels but with the following nonexertional
12   limitations:  he must avoid workplace hazards, such as unprotected heights and working with,
13   around, or operating moving machinery; and he is limited to simple, repetitive tasks with no public
14   contact."  AR 15.

15       When determining Wilson's RFC, the ALJ asserted that he considered "all symptoms…as
16   consistent with the objective medical evidence." AR 16.  He characterized his assessment as
17   consistent with Williams' consultative May 2013 opinion and as more restrictive than the October
18   2012 initial determination by Heldman. AR 16-17.  The ALJ "accepted" the April 2013
19   assessments of DeBattista who, according to the ALJ, opined that Wilson "remains capable of
20   performing simple repetitive tasks, subject to a moderate limitation in maintaining concentration,
21   attention, persistence and pace." AR 17.  The ALJ further characterized DeBattista's opinions and
22   his own conclusions as "consistent" that while Wilson "would be unable to perform complex and
23   detailed tasks, he could be able to understand, remember and carry out simply one and two-step
24   job instructions, subject to a moderate limitation in concentration, attention and persistence."  AR
25   18.

26       At the fourth step, the ALJ found that Wilson was unable to perform past relevant work.
27   AR 20.  At step five, the ALJ considered "age, education, work experience, and RFC" and found
28   there were jobs in the national economy Wilson could perform, identifying three jobs by their

4

DOT titles. AR 21.[3] As a result, the ALJ determined Wilson was not disabled as defined by the Social Security Act. AR 21.

Wilson argues that the ALJ's decision must be reversed because the ALJ's RFC assessment – limiting him to "simple repetitive tasks" – failed to take into account examining psychologist DeBattista's assessment that Wilson was able to perform "one or two-step job instructions." Pl.'s Mot. 2. In addition, Wilson argues that the ALJ failed to give a reason for rejecting DeBattista's contrary opinion. *Id*. The Commissioner cross-moves for summary judgment, contending that the ALJ's RFC assessment "properly set forth his pertinent findings regarding evidence from DeBattista." Cross- Mot. 3, 7

**LEGAL STANDARD**

**I.     DISABILITY DETERMINATION**

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382 c(a)(3)(A)-(B); *Hill v. Astrue,* 698 F.3d 1153, 1159 (9th Cir.2012). To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R § 404.1520(a)(4)(i)-(v).

In the first two steps of the evaluation, the claimant must establish that he or she (1) is not performing substantial gainful activity, and (2) is under a "severe" impairment. *Id.* § 416.920(a)(4)(i)-(ii). An impairment must have lasted or be expected to last 12 months in order to be considered severe. *Id.* § 416.909. In the third step, the claimant must establish that his or her impairment meets or medically equals a listed impairment described in the administrative regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of

---
[3] According to Wilson, and not disputed by the Commissioner, each job identified by the VE and relied on by the ALJ has a GED "reasoning level 2." Pl.'s Mot. 8.

the listed impairments, before proceeding to the fourth step, the ALJ is to make a RFC determination based on all the evidence in the record; this determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* § 416.920(e).

In step four, the claimant must establish that his or her impairment prevents the claimant from performing relevant work he or she did in the past. *Id.* § 416.920(a)(4)(iv). The claimant bears the burden to prove steps one through four, as "[a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." *Id.* (alterations in original). Once the claimant has established this *prima facie* case, the burden shifts to the Commissioner to show at the fifth step that the claimant is able to do other work, and that there are significant number of jobs in the national economy that the claimant can do. *Id.* §§ 416.920(a)(4)(v),(g); 416.960(c).

## II. LEGAL FRAMEWORK FOR STEP FIVE

At step five, the Commissioner considers the RFC assessment, the claimant's age, education, and work experience in order to determine if the claimant is able to perform other work. 20 C.F.R. § 416.920(a). The RFC assessment consists of the "physical and mental" limitations on what a claimant can do as a result of his impairments. 20 C.F.R. § 416.945(a)(1). Then the ALJ evaluates potential occupations that a claimant can perform. *See* 20 C.F.R. § 416.966. The Department of Labor's Dictionary of Occupational Titles ("DOT") is used to determine what jobs exist in the national economy. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The DOT lists the General Education Development ("GED") Levels needed for a job, such as the "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance." *Id.*; DOT, App. C, 1991 WL 688702 (4th ed.1991).

The GED Levels consist of "the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Zavalin,* 778 F.3d at 846. Reasoning Level One is defined as ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002–03 (9th Cir. 2015). Reasoning Level Two is

defined as being able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*. The ALJ may also rely on the testimony of a Vocational Expert for information on what occupations a claimant can perform given his or her RFC. 20 C.F.R. § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 689 (9th Cir.2009). Lastly, the ALJ takes all the information, including "the claimant's [RFC], age, education, and work experience" to determine if he or she can perform a job in the national economy. *Valentine,* 574 F.3d at 689; *see also* 20 C.F.R. § 416.920(g). If conflict arises between the Vocational Expert's testimony and the DOT, the ALJ "is required to reconcile the inconsistency." *Zavalin,* 778 F.3d at 846.

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I review the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. *See Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir.1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater,* 94 F.3d 520, 521–22 (9th Cir.1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (internal quotation marks and citation omitted).

I must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir.2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins,* 466 F.3d at 882 (quoting *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989)); *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir.2007). If the legal error is harmless, then a reversal is unwarranted. *See Molina v. Astrue,* 674 F.3d 1104, 1111 (9th

7

Cir.2012) ("We may not reverse an ALJ's decision on account of an error that is harmless"). An error is harmless when it is "inconsequential to the ultimate non-disability determination." *Molina,* 674 F.3d at 1115 (citing *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir.2008)).

## DISCUSSION

Wilson argues that the ALJ erred in concluding that he has the RFC to perform "simple, repetitive tasks" because that conclusion is in conflict with DeBattista's opinion that Wilson could perform "simple one or two-step instructions." Pl.'s Mot. 7; *see* AR 16; AR 465. According to Wilson, DeBattista's opinion encompassed a "more restrictive" limitation than the RFC assessment. Pl.'s Mot. 7. Wilson asserts that DeBattista's "simple one or two-step instructions" limitation is consistent only with Level One reasoning on the GED scale. Pl.'s Mot. 8. In contrast, the "simple, repetitive tasks" limitation adopted by the ALJ falls under Level Two or Level Three reasoning. Pl.'s Mot. 8. As the potential jobs identified by the Vocational Expert during the examination, and adopted by the ALJ in his opinion, require Level Two reasoning, the ALJ's determination is "facially inconsistent" with DeBattista's "one or two-step job instructions" opinion. Pl.'s Mot. 8.

The main issues I must address are whether a distinction exists between the two assessments and, if so, whether the ALJ was required to address that distinction and explain why he selected the "simple, repetitive tasks" limitation. I conclude that there is a distinction between the two assessments and, therefore, the ALJ was required to address it and justify his decision to adopt an RFC assessment limiting Wilson to "simple, repetitive tasks."

Wilson relies on *Rounds v. Commissioner Social Security Administration* to argue that there is a critical distinction between the "simple one or two-step instructions" assessment adopted by DeBattista and the "simple, repetitive tasks" limitation adopted by the ALJ. Pl.'s Mot. 7, 8. In *Rounds*, the ALJ's RFC determination limited the plaintiff to "one to two-step tasks." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). A Vocational Expert testified that the plaintiff could perform jobs like a kitchen helper, hand packager, and recycler – all requiring Level Two reasoning on the GED scale. *Id.* at 1002. On appeal, plaintiff argued that the RFC

limitation to "one to two-step tasks" matched Level One reasoning ("ability to carry out simple one- or two-step instructions") and, therefore, she could not as a matter of law perform the Level Two jobs identified by the Vocational Expert. *Id*. at 1103. The Ninth Circuit agreed and found a conflict between the RFC limit to "one and two step tasks" tasks and the Vocational Expert's selection of Level Two reasoning jobs, given the "close similarity" between the RFC limitation and Level One reasoning. *Id*. The Ninth Circuit remanded the case so that the ALJ could articulate a reasonable explanation to justify relying on the Vocational Expert's testimony and selection of Level Two reasoning jobs. *Id*. at 1004.

Wilson also relies on *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015), where the Ninth Circuit held that there was "an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Id*. at 847. In *Zavalin*, as here, the plaintiff was limited by the ALJ to carrying out simple, repetitive tasks. There, however, the ALJ adopted the Vocational Expert's testimony that the plaintiff could perform Level Three reasoning jobs.[4] The Ninth Circuit saw a problem because "Level 2 Reasoning— applying common sense to carry out detailed but uncomplicated instructions and dealing with problems involving a few variables—seems at least as consistent with Zavalin's limitation as Level 3 Reasoning, if not more so." *Id*. at 847. Because "the ALJ failed to recognize an inconsistency, she did not ask the expert to explain why a person with Zavalin's limitation could nevertheless meet the demands of Level 3 Reasoning," and the case was remanded. *Id*.

*Rounds* shows that a significant distinction exists between Level One and Level Two reasoning jobs, with Level One jobs typically lining up with the ability to perform one or two step job instructions. However, *Rounds* differs from this case in a significant way. The conflict in *Rounds* focused on the differences between the RFC-imposed limitation to one and two-step jobs and Vocational Expert's identification of appropriate jobs falling at the Reasoning Two level. *Id.* In the present case, plaintiff does not argue that a conflict exists between the ALJ's RFC-imposed

---

[4] Level Three reasoning requires application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Zavalin v. Colvin*, 778 F.3d at 847.

9

1    limitation ("simple, repetitive tasks") and the Vocational Expert's testimony identifying Level
2    Two jobs. *See* AR 16-18. Instead, the alleged conflict is between DeBattista's assessment (that
3    on its face potentially matches Level One reasoning) and the ALJ's RFC-imposed limitation to
4    simple and repetitive tasks.

Following *Rounds*, a number of district courts in this Circuit have reversed ALJ decisions imposing a "simple, repetitive tasks" RFC limit where the ALJs fail to address and distinguish conclusions by doctors that claimants can perform one-and-two step instructions. For example, in *Burson v. Berryhill*, No. 15-CV-04991-DMR, 2017 WL 1065140, at *4 (N.D. Cal. Mar. 20, 2017), after noting that *Rounds* made clear the distinction between a limitation to one-and-two-step instructions and the ability to perform simply, repetitive tasks, the court addressed a factually similar scenario and concluded the ALJ erred. "The court concludes that the ALJ erred with respect to Dr. Bailey's opinion. To the extent that the ALJ accepted the opinion that Plaintiff is limited to one– and two–step instruction work, the ALJ's RFC assessment does not account for that limitation. . . . To the extent that the ALJ rejected that portion of Dr. Bailey's opinion, he erred by failing to provide any reasons for doing so." *Id*. at *4; *see also Banales v. Berryhill*, No. EDCV 16-1247 AGR, 2017 WL 651941, at *2 (C.D. Cal. Feb. 16, 2017) (remanding where ALJ acknowledged a doctor's functional assessment that claimant could perform one- or two-step instructions, but did not expressly discount that conclusion and instead limited claimant to performing "simple repetitive tasks"); *Garcia v. Colvin*, No. CV 16-00652-JEM, 2016 WL 6304626, at *6 (C.D. Cal. Oct. 27, 2016) ("the ALJ's simple, repetitive tasks RFC limitation is consistent with Dr. Deaver's 'simple, routine non-stressful work' opinion (AR 63) but plainly inconsistent with his 'easy 1, 2 step directions' limitation which the ALJ decision never mentions. The ALJ necessarily rejected the latter limitation without any explanation as required by Social Security regulations."); *Wells v. Colvin*, No. 1:15-CV-0285-JLT, 2016 WL 4744668, at *8 (E.D. Cal. Sept. 13, 2016) (remanding where ALJ purported to accept doctor's opinion "who reviewed the medical evidence and concluded Plaintiff could 'sustain simple one-two step repetitive tasks,'" but "did not adopt this limitation in the RFC, instead limiting Plaintiff to "simple, routine, and repetitive tasks."); *cf*. *Navarro v. Astrue*, No. CV 10-217-PLA, 2010 WL 5313439, at *5 (C.D.

Cal. Dec. 16, 2010) (after noting that a number of district court cases in the 9th Circuit had concluded that "a person capable of performing simple repetitive tasks can perform jobs with a GED reasoning level of one . . . **and** jobs with a GED reasoning level of two," court concluded that the "ALJ's determination that plaintiff can do simple work (*i.e.*, jobs with GED reasoning levels of one and two) did not adequately encompass" the doctor's conclusion that plaintiff could perform one-and-two step instructions).[5]

Following *Rounds*, I agree that there is a significant distinction between limitations to one- to two-step instructions and RFCs allowing performance of simple, repetitive tasks. The ALJ's attempt to adopt DeBattista's opinions, but subsequent failure to address DeBattista's functional assessment effectively limiting plaintiff to carrying out "simple one or two-step job instructions" and express preclusion of ability to cope with "detailed and complex instructions," was erroneous. The Commissioner points out that non-examining psychologist Dr. Williams limited Wilson to simple repetitive tasks. Cross-Mot. 5; AR 79. True, but the ALJ was still required to give a reasoned explanation of why he was rejecting the limitation of DeBattista, despite his apparent acceptance of DeBattista's opinions, in favor of Dr. Williams. The ALJ gave no reason to disregard DeBattista's limitation. The Commissioner's post-hoc attempts to buttress the ALJ's decision are not sufficient. *See, e.g., Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012) (ALJ must give clear and convincing reasons to "reject an examining physician's opinion").

Despite the Commissioner's arguments otherwise, the error was not harmless. The attempt

---

[5] A number of cases pre-dating *Rounds* concluded the opposite, in part based on the rationale that the doctors' opinions that claimants could perform one or two-step instructions were not limitations *per se* but assessments of what claimants could do and as long as the ALJ "simple, repetitive tasks" RFCs were not otherwise in conflict with the evidence, there was no error. Some of those courts *also* noted that there was additional evidence in the record from which the ALJ could, nevertheless, determine that the claimant could perform simple, repetitive tasks in addition to ones that involve only one or two-step instructions. *See, e.g., Johnson v. Colvin*, No. 13-CV-04862-EDL, 2014 WL 5794337, at *8 (N.D. Cal. Nov. 6, 2014) ("Plaintiff's doctors did not phrase the one- to two-step job instructions as a limitation, and the ALJ weighed the evidence from the whole record to make a rational determination that Plaintiff retained an RFC for simple, repetitive tasks."); *Salas v. Astrue*, No. 1:10-CV-0478 SKO, 2011 WL 2620370, at *6 (E.D. Cal. June 29, 2011) (affirming ALJ decision which "expressly acknowledged" doctor's opinion that claimant was "able to perform one-to-two step, simple job instructions" but considered it consistent with his RFC-limitation to "simple, routine work," in part because doctor "did not affirmatively limit Plaintiff to one- to two-step tasks" but instead "the affirmative limitation was directed to job instructions that were complex or technical.").

to equate unskilled work (or SVP 2 work, as the jobs identified by the VE were) with jobs requiring only one- or two-step instructions is not persuasive. Cross-Mot. 6. The Commissioner has not shown that regulations and SSA guidance defining unskilled work necessarily equate to the ability to perform only one or two-step job instructions. *See, e.g.,* Reply at 3 (arguing that "unskilled work" can cover jobs requiring various reasoning levels); *see also* Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000), 2000 WL 1898704.

## CONCLUSION

For the reasons above, I GRANT Wilson's motion for summary judgment and DENY the Commissioner's cross-motion for summary judgment. This matter is remanded to the Agency for further proceedings.

**IT IS SO ORDERED.**

Dated: May 9, 2017

William H. Orrick
United States District Judge